Mr. Chief Justice Shaekev
delivered the opinion of the court.
Newman instituted this suit on two writings obligatory for the sum of 600 dollars, to which Gibson pleaded two special pleas in bar. First, that the writings obligatory were given to secure purchase money agreed to be giyen for a lot in the town of Vicksburg, to which the plaintiff below represented, ■ that he had a good, unincumbered, indefeasible title, and agreed and promised, that if defendant would execute his notes for 18.00 dollars, payable in three annual instalments, he would make to him a good and complete title to the lot, free from all incumbrances. That *346 the defendant confided in his promises, and executed the writings obligatory in the declaration mentioned with one other, and concludes by averring, that at the date of the contract, the plaintiff had not a good, indefeasible and unincumbered title to the lot, and was not authorised to sell.
The second plea was, that the notes were given for the lot, and that Newman at the time of making, represented that he was seised by good and indefeasible title, free from all incumbrances; and that if Gibson would execute to him the notes, he agreed and promised to make him a good title, and concludes by averring the execution of the notes by Gibson as the performance on his part; and also, that he has paid one of the notes, and has at all times been ready and willing to pay the others, if Newman would make him a title; and avers, that he demanded title, which was refused.
To these pleas there was a demurrer, and several causes assigned, which was sustained, and we are to determine whether it was properly or improperly sustained.
For the plaintiff in error, it is insisted that the facts pleaded and-admitted by the demurrer, amount to fraud, and that the contract was therefore void. In making an application of this position to the first plea, it is untenable, both in reference to the form of the plea and the matter pleaded. The representations of Newman in regard to the goodness of his title, are only set out in the plea, by way of inducement, and fraud cannot be set up in that manner, but must be directly charged. Nor does it in point of fact amount necessarily to fraud, that Newman had not, at the time of sale, “ a good, indefeasible, and unincumbered title.” It is not pretended that it was part of the contract that titles should pass on the day of sale, and it was, therefore, immaterial whether Newman had, at that time, an unincumbered title or not. If he was prepared to make such a title as he contracted for at the time he undertook to convey, it is all that the defendant had a right to require. Numerous authorities might be cited to show, that it is not necessary that the vendor should have a complete unincum-bered title at the time he contracts; if he is able to convey at the time he has designed to do so, it is sufficient. Two of the autho *347 rities, cited by the counsel for defendant in error, fully sustain the position. 5 Cowen, 510; 9 Johns. Rep. 126. The first plea was, therefore, manifestly bad, and the demurrer was properly sustained to it.
The second plea presents the subject in a diiferent light, but it is not entirely free from objections on the ground of uncertainty. The representations of the plaintiff in regard to his title, as set out in the plea, are subject to the same objections which have been applied to the first plea. It is stated that the plaintiff below proposed that in consideration that Gibson would execute his notes for 1800 dollars, that he (Newman) promised to make him a good title to the lot. Gibson avers that he executed the notes, and performance on his part, which were accepted as such. To construe this part of the plea alone, it might lead to the conclusion that the promise to make title was the consideration of the notes. The plea does not state when the title was to be made, and there is no reasonable inference that it was to have been made when the notes were executed; else why did the defendant pay one of them before he got a title, or why would he execute the notes without getting a title? No other conclusion is left than that the promises, as they are set up in this part of the plea, were independent; if so, it was not the performance of the promises to make title, but the promise itself which was the consideration of the notes. The case of Saunders v. Beal's Adm’r, 4 Bibb, 342, is directly in point, and that mutual promises amount to sufficient consideration, the one for the other, is shown by numerous authorities. 2 Kent’s Com. 365; 12 Johns. Rep. 397; 4 Bibb, 342.
We are to take, however, the substance of the whole of the plea, and see whether it is a bar to the action. It is averred that the notes sued on, together with one other, were given to secure the price of a lot in Vicksburg, sold by the defendant in error to the plaintiff. That the defendant promised to make a good and indefeasible title to the lot free from all incumbrances. That the plaintiff has paid one of the notes and has at all times been ready to pay the other, but that the vendor would not make him a title, and concludes by averring a demand of title and refusal.
• The principles of law as applicable'to covenants and promises, *348 which are verbal covenants, are well settled, but great difficulty frequently arises in ascertaining and fixing the character of the agreement. Covenants are of three kinds: 1. Those which are conditions precedent and dependent, where the performance of one depends on the prior performance of another. 2. Mutual conditions or concurrent covenants, which are to be performed at the same time; and 3. Mutual and independent covenants, when the default or non performance of the plaintiff is no excuse for the defendant. The particular division to which the case before us properly belongs is to be ascertained from the meaning and intention of the parties as gathered from the contract as pleaded, and it is to be regretted that it was not set out with greater certainty. The facts pleaded cannot amount to a bar unless the promises were mutual and dependent, or both to be performed at the same time by the one making title and the other paying the money. The party who wishes to excuse himself for a breach of his obligation, on the ground that the plaintiff had failed to perform his mutual undertaking, must plead the plaintiff’s agreement with sufficient certainty to show that he was bound to perform, and that his failure to do so discharged the defendant. It appears by the plea that Newman promised to make a good title, but the time at which it was to be made is not stated. By a fair construction of the plea it might with some plausibility be urged that the title should have passed when the notes were made, and yet such a construction would not strengthen the defence. There is an averment that in consideration that Gibson would execute his notes, Newman promised to make him a title. Gibson agreed to pay in three instalments; and at the maturity of which one of them was the title to have been made? Perhaps the fairest inference would arise in favor of the time of the last instalment, but I apprehend that matter should have been specially pleaded as an estoppel, and not be left to depend upon mere inference of fact.
It is necessary to aid the plea by construction, as that is the only means by which any time can be fixed at which Newman agreed to make a title; and suppose we assume that he was to have done so when the last payment fell due, the question then arises, were the arguments mutual and dependent, or indepen *349 dent? We find many adjudicated cases where it has been held that an agreement to pay by instalments, or at different times, would make the covenants mutual -and independent, as by doing so the party had manifested a willingness to rely on the covenant or promise of the other contracting party for title or performance, by parting with at least part of his money before he could with propriety call for performance on the other side. This rule of construction is adhered to both in England and in the United States, as will be seen from the following authorities, some of which hold that the payment of part is still more conclusive as to the character of the agreement. Pordage v. Cole, 1 Saunders, 319, note 4; Terry v. Duntze, 2 H. Bla. 389; Robb v. Montgomery, 20 Johns. Rep. 15; Champain v. White, 5 Cowen, 509; Mason v. Chambers, 4 Littell, 253; Saunders v. Beal, 4 Bibb, 342; Gardiner v. Corson, 15 Mass. Rep. 471. In the note to the case in Saunders this strong language is used: “ If a day be appointed for the payment of money, or part of it, or for doing any other act, and the-day is to happen, or may happen, before the thing, which is the-consideration of the money or other act is to be performed, an action may be brought for the money, or for not doing such other act before performance; for it appears that the party relied upon his remedy, and did not intend to make the performance a condition precedent: and so it is when no time is fixed for the performance of that which is the consideration of the money or other act.” The language of Mr. Justice Buller in Terry v. Duntze is equally conclusive, and so is the language of Judge Jackson, in Gardiner v. Corson; and the reporter of the case has added a copious note, and cited many authorities in support of the position.
I do not think the decision in the case of the Bank of Columbia v. Hagner, 1 Peters’s Rep. 455, cited by counsel for the plaintiff in error, can be said to sanction a different rule, when critically examined. The court decided that in contracts for land, the covenant should be considered mutual and dependent, unless a contrary intention appeared, and it was thought the contract before them did not show a different intention. The contract, if it existed at all, was predicated on the written proposition of Hagner, in *350 which he proposed to pay in six quarterly instalments, for which he would give his notes, if the plaintiff would give him a deed. If the bank should prefer it, however, he proposed to pay by in-stalments, and take a bond for title when the payments were completed. There was some doubt in point of fact, whether the bank had accepted the proposition; but if the act did amount to an acceptance, the bank was, of course, bound to perform the correlative part of the proposition, by either making a title, or giving bond for title. It must have been on this ground that the covenants or agreements were held to be dependent, although he had agreed to pay by instalments. If it were not, it is difficult to reconcile this decision with the authorities cited. In the case before us, the parties have shown their intention by their acts. Gibson gave his notes to pay the money at particular times, by which he manifested an intention to pay at all events, without regarding the performance of Newman as a condition. He has given for evidence of his intention by actually paying a part of the money, and has thus shown a willingness to part with it without getting a title, thus proving by his subsequent act what the law presumes he intended by his first.
The judgment of the court below must be affirmed.